Christine E. KENNEDY and Rose Marie Dennehy, Plaintiffs,

v.

STATE OF CONNECTICUT DEPARTMENT OF PUBLIC SAFETY, DIVISION OF STATE POLICE, et al., Defendants.

Christine E. KENNEDY, et al., Plaintiffs,

v.

Donald LONG, et al., Defendants.

Civ. Nos. B–82–153 (WWE), B–80–490 (WWE).

United States District Court, D. Connecticut.

Jan. 14, 1987.

Mary Ellen Wynn, Victoria de Toledo, Stamford, Conn., for plaintiffs.

Stephen O'Neill, Peter E. Wiese, Andrew Russell, Patricia M. Strong, Asst. Attys. Gen., Hartford, Conn., Frank Rogers, Asst. Atty. Gen., Meriden, Conn., Richard R. Brown, Brown, Paindiris & Zarella, James A. Wade, Janet C. Hall, Robinson & Cole, Hartford, Conn., for defendants.

RULING ON MOTIONS TO QUASH AND FOR A PROTECTIVE ORDER

THOMAS P. SMITH, United States Magistrate.

The plaintiffs in this civil rights action, 42 U.S.C. § 2000a *et seq.,* are former mem-

---

bers of the 91st Training Troop of the Connecticut State Police. They seek damages and equitable relief alleging that, while undergoing training between June and September of 1980, they were unlawfully subjected to "an intensive campaign of intimidation, harassment and physical and psychological abuse.... because of their sex." (Amended Complaint ¶ 1). According to the complaint, it was the defendants' policy and practice to encourage male trainees to abuse, humiliate and denigrate their female counterparts, the goal being to discourage women from completing their training. (Amended Complaint ¶¶ 11–12). Both plaintiffs left the Connecticut State Police in September of 1980. Since 1982, when this action was filed, the parties have been engaged in discovery. The matter is now before the court in a dispute regarding the proposed deposition of a nonparty, Margaret O'Connell.

## I.

Margaret O'Connell is, and was at all relevant times, a candidate for her doctorate in sociology. In the Summer of 1979, O'Connell contacted the United States Department of Defense ("DOD") to obtain the funding for her doctoral dissertation. The DOD and O'Connell agreed upon dissertation topic for which she would receive government funding to research and write her dissertation. The topic selected was: "Gender Integration of a Traditionally All-Male Field: A Definition of the Occupation".

Before research could begin, however, O'Connell had to locate an appropriate entity that was willing to be the subject of this study. Ultimately, the Connecticut State Police consented to be her subject, assertedly "upon the express understanding that confidentiality would be maintained throughout all phases of the research, including the final report." (Movant's Memorandum, Filing 66 at 3).

The University of Connecticut further required O'Connell to fill out a detailed form that was provided by the University's Committee on the Use of Human Subjects in Research. This form was submitted by Ms. O'Connell on June 5, 1980 (Filing 66, Exhibit D).

Paragraph 4.a of that form required O'Connell to: "Describe [her] procedure for obtaining informed consent, or explain why consent is not required. ATTACH HERETO A COPY OF THE CONSENT FORM." (Emphasis in original). Accordingly, O'Connell submitted an attachment which provided, in relevant part, that "[u]nder no circumstances will the facts observed, or the opinions held by the P.I. [Principal Investigator] be revealed to any other party." (*See* Exhibit D, Page 4). Also appended to this attachment is a model "Informed Consent Form", which recites that her project constituted a *"privileged relationship"* and that *"confidentiality* and anonymity are guaranteed". (Emphasis added).

O'Connell's research began in March of 1980. At some undisclosed time thereafter her formal proposal was accepted by the University and the DOD. The State Police 91st Training Class began in Meriden, Connecticut, in June of 1980. Because she was assured that her proposal would be approved, O'Connell began her on-site research project without funding, but assertedly "with the understanding that she was to conduct this research under a guarantee of confidentiality." Eventually, O'Connell received an $80 thousand research grant from the DOD.

In June of 1980 O'Connell was given an office in a building at the training site. Using this office as a base of operations, O'Connell generally was at the training site each weekday from 6:30 a.m. to 11:00 p.m. for the entire 20 week training session. During this period she conducted on-site research as a "participant observer". The training class consisted of 55 students, 13 of whom were women. (Filing 66 at 5).

Earlier in this litigation O'Connell was contacted by plaintiffs' counsel, as well as the Connecticut State Police, about being deposed. At that time O'Connell stated that she would not consent to be deposed because "confidentiality" was a condition

of her research, and that she would not violate either this "confidentiality" or the "privileged" relationship that she had with her subjects. She was not deposed at that time, nor was she again contacted about being deposed until April of 1986, when she was served with a subpoena.

Assertedly, O'Connell's research is still undergoing revision, and she has not released either her original report or a copy of it to anyone other than the DOD and her attorney. Her report has not yet been accepted by the DOD and may be subject to further revisions. Finally, movant O'Connell protests, her report is "the property of the [DOD and] may not be released without [DOD's] express permission (Movant's Memorandum, Filing 66 at 6–7).

The deposition subpoena duces tecum giving rise to the pending motions to quash and for a protective order was issued by the Clerk of the Court at plaintiffs' request. It requires Margaret O'Connell to be deposed and to bring with her to the deposition "all material, writing, notes, reports, letters, dissertations, etc.[,] concerning women in the Connecticut State Police." The plaintiffs and counsel for movant O'Connell have submitted briefs outlining the issues and their respective positions on them. The defendants have adopted a seemingly neutral stance, having filed no memoranda. An extremely able and helpful *amicus curiae* brief has been filed by the American Association of University Professors ("AAUP") (Filing 71), represented by Edward F. Sherman, Ann H. Frank and Jacqueline W. Mintz, Esquires.

O'Connell has moved to quash plaintiff's subpoena, and seeks a protective order barring the plaintiffs from taking her oral deposition, pursuant to Rules 26(c)(7) and 45(b), F.R.Civ.P. Movant O'Connell's resistance to the subpoena is based on five arguments. First, she maintains, the information she gathered while working at the training site was "obtained under a guarantee of confidentiality...." (Filing 66 at 6 ¶ 1). Second, O'Connell submits without substantial elaboration, the plaintiffs have "alternate sources" through which they can obtain the desired information (Filing 66 at 6 ¶ 1). Third, O'Connell sweepingly asserts, "a social scientist engaged in confidential research has a *privilege* to refuse to divulge his or her observations, field notes, opinions, and preliminary and/or final reports that resulted from ... confidential research." (Filing 66 at 6 ¶ 1). Next, she argues, to the extent the subpoena requires production of her final "report" it cannot be complied with, since the report is DOD "property" which may not be released without its consent. (Filing 66 at 5 ¶ 2 at 6). Finally, albeit implicitly O'Connell suggests, plaintiffs' subpoena is unduly broad and unreasonably burdensome.

## II.

Movant O'Connell does not deny the relevance of the information she possesses, nor can she. This lawsuit seeks damages for alleged violations of the plaintiffs' civil rights while they were members of the 91st Training Troop of the Connecticut State Police Department. Those violations allegedly occurred at the police academy between June and September of 1980.

Sociologist and scholar though she may be, Margaret O'Connell undeniably was at the training site during this critical period. The court cannot blind itself to her status as an eyewitness. The purpose of her presence aside, she had a unique opportunity to observe *facts* and *events* on whose occurrence the outcome of this lawsuit may well depend. If O'Connell actually witnessed such critical facts, any first hand information she possesses would relate directly to the merits of the case, hold the potential of equally benefiting each side to the lawsuit, and provide valuable assistance to the trier of fact in its search for the truth. Thus, while her moving papers do not do it, one must draw a threshold distinction between facts and circumstances which O'Connell herself witnessed and, on the other hand, information as to which she lacks first hand knowledge. As to the former, the plaintiffs unquestionably have a paramount right to O'Connell's testimony, and movant cannot seriously contend otherwise.

### III.

To the extent O'Connell's motions may possess force, it is more arguably with respect to documents and information falling within the latter category. This category encompasses O'Connell's scholarly conclusions, her academic opinions and those occurrences assertedly reported to her in "confidence" by nonparty research subjects. Though not necessarily admissible, items falling within this category are also potentially relevant and, unless otherwise ruled nondiscoverable, properly within the scope of plaintiffs' subpoena and O'Connell's contemplated oral examination.

### IV.

As *amicus* candidly recognizes, "the facts relevant to the discovery issue in this case are still sketchy, having been raised only by assertion in the parties' brief...." (Amicus Brief, Filing 71 at 3). This "sketchiness" hinders O'Connell far more than it does the plaintiffs. Where, as here, the pleadings and documents of record establish the relevance of the requested material, the burden is on the person or party resisting discovery to show "good cause" for non-disclosure or the entry of a protective order. *Penthouse Intern., Ltd. v. Playboy Enterprises*, 663 F.2d 371, 391 (2d Cir.1981); 4 J. Moore, *Federal Practice* ¶ 26.69 at 430 (1986). Movant O'Connell plainly has not sustained her burden with respect to at least three of her five arguments.

First, contrary to O'Connell's assertion, as drafted plaintiffs' subpoena duces tecum is not overly broad, nor would compliance with it be unduly burdensome. *Cf. Dow Chemical Co. v. Allen*, 672 F.2d 1262, 1278 (7th Cir.1982); *Farnsworth v. Procter & Gamble Co.*, 101 F.R.D. 355, 357–58 (N.D. Ga.1984). Second, there is no factual basis for O'Connell's assertion that plaintiffs have "alternate" sources reasonably available to them. On the instant record, rather, it appears that O'Connell could well be a repository of information which plaintiffs may be completely incapable of obtaining from any other source due, among other things, to the passage of time and to the natural hesitance of present state employees to provide information concerning what may have transpired during their training nearly seven years ago. Third, there is no factual basis to support movant's assertion that her "final report" is the "property" of the DOD. In fact, nowhere in her moving papers has movant gifted the court with an explanation of what she means by her "final report", nor is the court either moved or bound by her vicarious, conclusory description of it as "property" of the DOD.

### V.

In support of her sweeping claims of "confidentiality" and "privilege" movant relies almost exclusively on the district court's decision in *Andrews v. Eli Lilly & Co., Inc.*, 97 F.R.D. 494 (N.D.Ill.1983). As *amicus* points out, however, movant's "chief authority", *Andrews*, was reversed in *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir.1984).

Moreover, as plaintiffs suggest, *Andrews* is materially different from this case. There the movant, Dr. Herbst, sought to prevent disclosure of intimate medical information concerning individuals who were simply not involved in the underlying DES litigation, and the district court concluded that disclosure would automatically "dry up" Dr. Herbst's supply of information from cooperating physicians throughout the country. The effect, in sum, would have been to terminate a profoundly important medical study of 15 years duration. Given the dire consequences which the factual record indicated were likely to result, the trial court concluded that the risks of allowing discovery outweighed its benefits. Even then, the Court of Appeals ultimately reversed, directing the district court on remand to exercise its discretion with sufficient flexibility to allow defendant Squibb the discovery that was necessary in the circumstances without doing needless harm to the legitimate concerns voiced by Dr. Herbst. *Deitchman, supra*, 740 F.2d at 563–566.

This is a civil rights case alleging a violation of Title VII by the State of Connecticut. Society has an extraordinarily important interest in ensuring that civil rights are respected. This interest is shared by the plaintiffs who, through this lawsuit, seek to vindicate what they assert was an egregious violation of their rights. It is also shared by the defendants, who vehemently deny plaintiffs' allegations and, understandably, wish to avoid the stigma that a judgment against them would involve. Unlike Dr. Herbst, movant O'Connell was in daily contact during the relevant period with the very individuals whose alleged misdeeds gave rise to this lawsuit. And unlike Dr. Herbst's public health project, there is simply no factual basis in this case for concluding that O'Connell's "study" is in any way dependent on a continuing "inflow" of information.

Nevertheless, *amicus* ably advances several arguments which indicate that a reasonable attempt should be made to accommodate one legitimate concern voiced by O'Connell. As *amicus* points out, O'Connell is a scholar who obtained certain information under a promise of confidentiality. Requiring her on this record to divulge the identities of those individuals who communicated with her under a promise of confidentiality conceivably could needlessly jeopardize an important scholar-subject trust relationship without clearly serving a transcendent interest. Accordingly, without prejudice to plaintiffs' right to apply to the court at a later date if necessary, O'Connell may redact, at her own expense, from the documents which she produces the names of individuals whose communications to her assertedly were given under a promise of confidentiality. Of course, nothing in this memorandum shall restrict plaintiffs from inquiring at O'Connell's sworn deposition whether movant herself previously disclosed the identities of any of the individuals in question or whether there otherwise has been a "waiver" of what O'Connell describes as a privilege.

## VI.

O'Connell's deposition will go forward upon adequate renotice. Except to the extent that O'Connell may, at her own expense, redact from the documents which she produces the names of individuals who communicated with her under a promise of confidentiality, her motions to quash and for a protective order are denied.